# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| STOKES NIELSON, also known as GEOFFREY STOKES NIELSON | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| v. | ) ) | Civil Action No. 3:12-CV-00419 |
| LAUREN LEITER, individually, and CHYNNA RAE CARRION now known as CHYNNA RAE TAYLOR, individually, together professionally known as LIGHTER RAY, | ) ) ) ) ) ) | JUDGE TRAUGER<br>Magistrate Judge Bryant<br><br>JURY DEMAND |
| Defendants/Counter-Plaintiffs. | | |

## INITIAL CASE MANAGEMENT ORDER

As required by Local Rule 16.01(d)(2), counsel for the parties submit to the Court this Proposed Initial Case Management Plan and Order, concerning the issues enumerated in FED. R. CIV. P. 26(f) and Local Rule 16.01(d)(1)(c) and (d)(2). The Initial Case Management Conference is set for **June 25, 2012** at 1:30 P.M. The following Initial Case Management Order is entered.

**A. JURISDICTION**

The Court has jurisdiction of Plaintiff's case pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and Plaintiff alleges the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Counter-Plaintiffs allege the Court has jurisdiction of their counterclaim pursuant to FED. R. CIV. P. 13(a), which Counter-

1

Plaintiffs allege arises out of the transaction(s) or occurrence(s) that is the subject matter of Plaintiff's Complaint against Defendants.

**B. THEORIES OF THE PARTIES**

**1. Plaintiff's Theory**

On December 13, 2010, Stokes Nielson and Defendants entered into an artist management agreement. Mr. Nielson, a well-known and reputable songwriter, producer and recording artist (among other talents), began his management company in mid-2010. He learned of Defendants, who were in a Corpus Christi, Texas band "Scarlet," reviewed them carefully for months, and the result was the duo Lighter Ray, which Mr. Nielson created, named and agreed to manage only if the parties had a written management agreement. Defendants agreed. Each party was represented by counsel in the negotiation and execution of the management contract.

Initially, Defendants were proceeding as independent artists, building a fan base, and pursuing commercial success without a major label. Months after the parties signed their deal, Defendants elected to pursue a major label deal, generally a much longer, substantially riskier path than the independent artist route. Mr. Nielson turned his efforts to this new goal, including setting up co-writing sessions for Defendants with Nashville writers, introducing Defendants to his major publisher to secure access to top notch copyrights for Defendants to record, with a view to land a major publishing deal, developing Defendants' image, and presenting Defendants at an industry showcase to which Mr. Nielson got four major labels, major music publishers and other industry players to attend. Every label passed, several indicating there were imaging issues. Mr. Nielson relentlessly pursued his label and industry contacts, and ultimately convinced Capitol Nashville to travel to a Lighter Ray show in Texas, whereupon Defendants secured a demonstration recording contract, a mere nine months after signing their management

deal. Within one year and through his diligent efforts, Mr. Nielson positioned Defendants for a publishing deal and arranged for a major booking agency for Lighter Ray. In March 2012, Defendants unceremoniously terminated Mr. Nielson through an email from their attorney, advising him they were ending their relationship and going their separate ways, and that they would be managing themselves, which prompted this suit after notice of breach was served and a cure period elapsed.

In retaliation, Defendants filed a counterclaim, making wild, baseless allegations against Mr. Nielson in an effort to humiliate him into capitulating and to void the valid, enforceable contract Defendants signed. Defendants disingenuously represented (1) to Judge Haynes that they had not signed a "long form recording agreement" with Capitol Records, failing to disclose Defendants signed a "demo deal" with Capitol Records Nashville, with Capitol having the option to enter into a long form exclusive recording agreement with Defendants; (2) to Judge Haynes and this Court that there was a "laundry list" of Mr. Nielson's *material* breaches dating back to December 2010 when Defendants served no notice of breach until more than a month after Mr. Nielson initiated this action with Defendants affording Mr. Nielson no opportunity to cure; and (3) to Judge Haynes and this Court, that they have not "hired" another manager or "signed" with another manager when in fact, Defendants and Defendant Leiter's husband have been managing Defendants as was done prior to the parties' management agreement. Each of the foregoing was done in breach of Defendants' written agreement with Mr. Nielson. Defendants also represented to Judge Haynes and this Court that Mr. Nielson has "contractual rights" to "advise, counsel and assist" Defendants in their career and that Defendants have done nothing to prevent Mr. Nielson from exercising his rights under the 2010 Management Agreement. Nonetheless, since March 2012 Defendants have ignored communications from Mr. Nielson and refuse to speak to or have

contact with him, in breach of the parties' agreement. Defendants walked away from their contract, and now cobbled together a tawdry defense of distortion and blame to avoid their contractual obligations.

   **2. Defendants' Theory**

Plaintiff filed a Complaint against Defendants on April 27, 2012 alleging breach of contract, declaratory judgment and unjust enrichment. Defendants deny these allegations. Plaintiff specifically alleges that Defendants have breached the December 13, 2010 Management Agreement ("Management Agreement"); however, this claim is without merit. Defendants have not prevented Plaintiff from exercising his rights under the Management Agreement. Defendants have not hired nor contracted with another personal manager and have therefore not violated the exclusivity of the Management Agreement. Defendants have also paid all invoices given to them by Plaintiff and have not received any loans from Plaintiff.

Defendants also deny that Plaintiff is entitled to a declaratory judgment. As stated above, Defendants have not breached the Management Agreement; conversely, it is Plaintiff who has breached the Management Agreement and Defendants have filed counterclaims alleging same along with supporting affidavits and exhibits. Defendants deny that Plaintiff is entitled to any compensation for any services as alleged in the Complaint, as Plaintiff did not provide the services as described therein.

Defendants vehemently deny and dispute all of the allegations of the Plaintiff set forth above, and as otherwise listed in Plaintiffs Complaint. Furthermore, the Defendants have asserted numerous affirmative defenses against the Plaintiff, including:

   a. First material breach of the Management Agreement by the Plaintiff;
   b. The Management Agreement is void and unenforceable;

c. Unclean hands;

d. Doctrine of waiver;

e. Failure to state a claim upon which relief can be granted;

f. Doctrine of acquiescence;

g. Plaintiff is estopped by his own acts, conduct or omissions;

h. Plaintiff failed to mitigate his alleged damages.

Defendants have filed a counterclaim against the Plaintiff, including an action for declaratory judgment, breach of contract, breach of fiduciary duty, intentional interference with contractual and business relations and attorney's fees and costs. The Defendants as Counterclaimants specifically request that the Court issue a declaratory judgment, declaring that 1) Plaintiff as Counterdefendant has committed multiple material breaches of the Management Agreement; 2) Counterdefendant's material breaches of the Management Agreement are so substantial and fundamental as to defeat the object of the parties in entering the Management Agreement; 3) The Counterclaimants can legally prevent Counterdefendant from enforcing the Management Agreement, insofar as, disallowing Counterdefendant from continuing to act in the role as the Counterclaimants personal manager due to Counterdefendant's multiple material breaches of the Management Agreement, including breaches of fiduciary duties as well as the antagonistic, uncooperative, entirely unfruitful relationship between the parties; 4) The Counterclaimants have the ability to render the services of another personal manager to further their music career; and 5) The Management Agreement is void and/or rescinded.

The Counterdefendant has materially and irreparably breached the Management Agreement by continuously failing to fulfill his "fiduciary" duty in the "best-interest" of the Defendants and failing to fulfill his role as the "key-person" rendering day-to-day services as is

required under the Management Agreement in paragraph 5.8 and paragraph 9 respectively. In addition to the fiduciary duties which are specifically set forth in the Management Agreement and which Counterdefendant must render his "best efforts" to fulfill under the Management Agreement, Counterdefendant owes a fiduciary duty of good faith and fair dealing to the Defendants under the law as the Counterclaimants personal manager, and he has breached this fiduciary duty as well.

The Counterdefendant has also intentionally interfered with the Counterclaimants' contractual and business relations by intentionally taking musicians who had an existing business relationship with Counterclaimants and using them for his own band. Counterdefendant was aware of the relationship between these musicians and Counterclaimants. Counterdefendant intended to cause a breach this relationship and did in fact cause a breach of this business relationship by having the musicians play shows with Counterdefendant and thus forcing Counterclaimants to cancel previously scheduled live performances as a result. Counterdefendant certainly had self-serving and improper motives in taking these musicians.

All of the above has resulted in damages to Counterclaimants as will be proven at trial. Pursuant to paragraph 11.2 of the Management Agreement, the prevailing party is entitled to reasonable attorney fees, costs and expenses. The Counterclaimants have already prevailed on Plaintiffs motion for a temporary restraining order and intend to succeed during the remainder of this matter. Accordingly, the Defendants are entitled to attorney's fees and costs.

**C. ISSUES RESOLVED**

1. Plaintiff Stokes Nielson and Defendants Lauren Leiter and Chynna Rae Carrion (now known as Chynna Rae Taylor) entered into a Management Agreement effective as of December 13, 2010, a copy of which is attached to Plaintiff's Complaint.

2. The Management Agreement was entered into between Stokes Nielson and Lauren Leiter and Chynna Rae Carrion (now known as Chynna Rae Taylor) as of December 13, 2010 and is for an initial term of three years commencing December 13, 2010 and ending December 12, 2013.

3. Each of the defendants/counter-plaintiffs is one-half of the vocal duet professionally known as Lighter Ray, and that Defendants Lauren Leiter and Chynna Rae Carrion, collectively known as Lighter Ray, entered into a Demonstration Recording Agreement with Capitol Records Nashville as of September 23, 2011.

4. Plaintiff Stokes Nielson, whose full legal name is Geoffrey Stokes Nielson, does business as Stokes Tunes with his office located at EMI Music Publishing Bldg., 35 Music Square East, Suite 123, Nashville, TN 37211.

5. On or about August 13, 2011, Defendants formed a Texas limited liability company, Lighter Ray, LLC, with its principal place of business at 5130 Lethaby Drive, Corpus Christi, Texas 78413.

6. This Court has jurisdiction of the case and venue is proper in the Middle District of Tennessee.

**D. ISSUES DISPUTED**

All issues not identified in Section III-C (1) – (6) above are in dispute, including liability and damages.

**E. INITIAL DISCLOSURES**

Pursuant to FED. R. CIV. P. 26(a)(1), all parties must make their initial disclosures within fourteen (14) days after the initial case management conference on or before Monday, **July 9, 2012.**

Plaintiff will seek a protective order should Defendants be unwilling to voluntarily agree to a stipulated protective order.

### F. STAGING OF DISCOVERY

Discovery is not stayed during dispositive motions, unless ordered by the Court. Local Rule 33.01(b) is expanded to allow forty (40) interrogatories, including sub-parts. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger. "Motions concerning discovery" **do not** include motions to extend discovery deadlines.

1. **Written Discovery.** The parties will serve written discovery in sufficient time so that responses will be served by Friday, **February 15, 2013**.

2. **Depositions.** Following the exchange of written discovery, counsel will schedule by agreement and complete all non-expert depositions by Tuesday, **April 16, 2013**.

3. **Plaintiff's Experts**. By the close of business on Tuesday, **April 23, 2013**, Plaintiff shall declare the identity of any expert witnesses and provide all information specified in Fed. R. Civ. P. 26(a)(2)(B), including all reports.

4. **Defendants' Experts**. By the close of business on Wednesday, **May 15, 2013**, Defendants shall declare the identity of any expert witnesses and provide all information specified in Fed. R. Civ. P. 26(a)(2)(B), including all reports.

5. **Discovery Cut-Off**. All discovery, except experts, shall be completed by Tuesday, **April 16, 2013**.

6. **Expert Discovery Cut-Off**. All expert discovery shall be completed by Friday, **June 21, 2013**.

**G. COUNTERCLAIMS, CROSS-CLAIMS, THIRD PARTY CLAIMS, AMENDMENTS TO THE PLEADINGS, JOINDER OF PARTIES OR CLAIMS**

Defendants Leiter and Carrion/Taylor filed a counterclaim on June 1, 2012. The parties do not anticipate any additional claims at this time; however, any cross-claims, third party claims, amendments or supplements to the pleadings, joinder of parties or claims shall be filed on or before Friday, **November 16, 2012**.

**H. ALTERNATIVE DISPUTE RESOLUTION**

A Joint Mediation Report will be filed by Monday, **May 20, 2013**.

**I. DISPOSITIVE MOTIONS:** Dispositive motions shall be filed by Tuesday, **July 2, 2013**. Responses to dispositive motions shall be filed within twenty (20) days but no later than Monday, **July 22, 2013**. Optional reply briefs shall be filed within ten (10) days after filing the response but no later than Thursday, **August 1, 2013**. The motion and response memoranda shall not exceed twenty (20) pages. Reply briefs, if any, shall not exceed five (5) pages, absent Court permission for longer reply briefs. If dispositive motions are filed early, the response and reply dates are moved up accordingly. No motion for partial summary judgment shall be filed except upon leave of Court. Any party wishing to file such a motion first shall file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the Court.

**J. ELECTRONIC DISCOVERY**

The parties agree that the default standard contained in Administrative Order No. 174 will apply to this case until such time as the parties reach an agreement on how to conduct electronic discovery.

**K. ESTIMATED TRIAL TIME**

At this time, the trial is expected to be a jury trial which will last four to five days.

IT IS SO **ORDERED**.

_____
ALETA A. TRAUGER
U.S. DISTRICT JUDGE

**APPROVED FOR ENTRY:**

/s/ Ramona P. DeSalvo_____
Ramona P. DeSalvo (#018491)
DESALVO LAW FIRM PLLC
1400 5th Ave. N.
Nashville, TN 37208
Telephone: (615) 800-8919
Facsimile: (615) 800-8918
rdesalvo@ramonadesalvo.com

Attorney for Plaintiff/Counter-Defendant Stokes Nielson

_/s/ Derek C. Crownover_____
Derek C. Crownover TN Bar #: 016650
Austen Adams TN Bar #: 025233
Crownover Blevins, PC
1701 18th Avenue S.
Nashville, TN 37212

Attorney for Defendants/Counter-Plaintiffs Lauren Leiter
and Chynna Rae Carrion aka Chynna Rae Taylor